**UNITED STATES of America,**

v.

**Antonio CORALLO, Henry Fried, Herbert Itkin, James L. Marcus, Daniel J. Motto, Charles J. Rappaport, and S. T. Grand, Inc., Defendants.**

**No. 67 Cr. 1051.**

United States District Court
S. D. New York.

May 3, 1968.

See also D.C., 281 F.Supp. 24.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, for United States of America; Michael S. Fawer, Arthur A. Munisteri, Asst. U. S. Attys., of counsel.

Barry Ivan Slotnick, New York City, for defendant Antonio Corallo; Jacob Kossman, Philadelphia, Pa., of counsel.

Zoloto, Karger & Zurkow, New York City, for defendants Henry Fried and S. T. Grand, Inc.; Alfred Donati, Jr., New York City, William W. Kleinman, Brooklyn, of counsel.

James M. La Rossa, New York City, for defendant Daniel J. Motto.

Peter J. McBride, New York City, for defendant Charles J. Rappaport.

## OPINION

WEINFELD, District Judge.

### MOTION FOR TRANSFER OR CONTINUANCE

The defendants Corallo, Fried, S. T. Grand, Inc., and Motto renew motions previously made and denied by Judge Wyatt for a transfer of this case to another district or, in the alternative, for a continuance to the Fall Term, upon the ground of prejudicial pretrial publicity.

The indictment, a one-count conspiracy charge involving the use of interstate facilities in furtherance of bribery activity, was returned on December 18, 1967. The prior motions were made soon thereafter when, admittedly, for a period of several weeks, there was substantial publicity. The nature of the indictment, centering as it does about

a public official and the alleged corruption of his office, as was to be anticipated, resulted in vast coverage by the communications media, both locally and nationally.

On March 13, 1968, when Judge Wyatt denied the prior motions, it was without prejudice to renewal at the time of trial. Thereafter the case was assigned for trial to this court, which, after hearing counsel, scheduled June 3, 1968 as the trial date.

Instead of awaiting the opening of the trial or the voir dire examination of jurors, the defendants, in advance thereof, renew their application for a change of venue and a continuance. The defendant Rappaport now joins in the motions.

■ The publicity which followed in the wake of the indictment gradually tapered off, so that by the end of December 1967 and at the latest, early January 1968, the case, in quiescent status, no longer attracted press notice. Since then references to the matter have been sparse and fragmentary. In mid-January, 1968, two individuals were indicted in an alleged plot to murder a prospective witness in this case; this brought on a new flurry of publicity. By the end of January the publicity had subsided and the news media was again "cold" on the subject. On March 9 an article appeared in the New York Times, apparently the result of its own initiative, which suggested that Itkin, a defendant herein, had served the government in an undercover capacity and was to be a government witness. The publicity with respect to the latter items appeared prior to Judge Wyatt's denial of the motions on March

13, and obviously was considered by him. Subsequent to the denial the only publicity was a factual report of the assignment of this case for trial purposes appearing in the New York City newspapers on April 10—a notice no different from that normally accorded to any case which has attracted public interest.

On June 3, five months will have elapsed from the high point of publicity in the latter part of December, and since then, except for the intermittent items referred to above, there has been no publicity. Thus, the substantial time lapse between the plateau of publicity and June 3 will have attenuated the impact of the publicity.[1] One needs no reminder that within that period, up to the present, news of transcendent importance, international and domestic, has captured the daily headlines of all communications media[2] and further served to blunt the force of the publicity in this case.

June 3 appears to be a desirable trial date for another reason. Upon the argument of these motions it was stated that another investigation, in progress for some time (and apparently known to some defense counsel), is likely to continue into the summer and may, if indictments are returned, bring forth a new spate of publicity which would deluge the trial, were it to be continued to the Fall.

It would be unrealistic not to recognize that no matter what date is set for trial, and no matter where tried, the case will attract publicity. Delay beyond June or transfer to another district will not eliminate press or other coverage. In such circumstances, transfer to another district, in and of itself, does not assure the defendants of the fundamentally fair

---

1. Cf. United States v. Armone, 363 F.2d 385, 395–96 (2d Cir.), cert. denied, 385 U.S. 957, 87 S.Ct. 398, 17 L.Ed.2d 303 (1966); United States v. Zovluck, 274 F.Supp. 385, 389 (S.D.N.Y.1967).

2. These include the Vietnam war, the Pueblo incident, the gold crisis, riots in cities, the Presidential candidacies. President Johnson's announcement he would not run again, the Martin Luther King assassination, tax and fiscal problems,

student revolts, Congressional activities, the United Nations debates, to mention but a few. While this case undoubtedly is of the utmost importance to each defendant, when viewed realistically against news which has a direct and meaningful impact upon the entire community, the publicity in the instant case may have been of relative unimportance to many readers or listeners, and impressions, if any, may well have evaporated by the trial date.

trial which is their constitutional due. In this court's considered judgment, each defendant's right to a fair and impartial jury is as readily assured in this vast metropolitan district, with jurors drawn from all walks of community life, as in any other district, particularly so in the light of the fact, stressed by defendants themselves, that the publicity which followed the return of the indictment was nationwide.

As this court stated with reference to a substantially similar situation:

"Publicity, in and of itself, does not foreclose a fair trial. The courts do not function in a vacuum and jurors are not required to be totally ignorant of what goes on about them. We live in a world of reality. Serious accusations against public officers and public figures are bound to receive wide publicity through all avenues of modern communication; the public interest will be more than casual and it would be rare to find persons qualified to serve as jurors who have not heard or read of such matters. These are facts that cannot be downed. On the other hand, it is also a fact that frequently in this large metropolitan district prospective jurors show little recall of past widely publicized matters; fears that jurors have formed opinions often prove groundless; the impact of news items upon the public mind, depending upon their nature, may be more imaginary than real. Further, impressions or even an opinion do not necessarily establish partiality or prejudice. That a case has been the subject of extensive publication or even comment does not, in and of itself, require automatic continuance of a trial; if that were the rule it would mean that, unless the press voluntarily refrained from continuing publicity, cases involving public officers or public figures could never be brought to trial. The fundamental question remains no matter what the trial date—can a fair and impartial jury be obtained which will decide the issues in the case solely upon the evidence presented in the courtroom? Whether or not the publicity has been of such a nature that the selection of a fair and impartial jury is foreclosed at this time cannot be determined until jurors are questioned on the voir dire." [3]

The fundamental question of the probability of a fair trial can, under the facts of the instant case, be resolved at the time of trial. There is no basis for a different disposition than that reached by Judge Wyatt, and the renewed motions are denied.

■ Since this opinion was first prepared, counsel have directed the court's attention to an article which appeared in last Sunday's magazine section of the New York Times (April 28). The article is a general one on corruption in government with references going back to the 19th century and the early 1930's, as well as to more recent matters. In its thousands of words, there is a two-sentence notice of this case and one defendant (other than movants) with a picture of that defendant upon his arrest. The article has no direct reference to any factual aspect of this case. The defendants urge publication of this article in additional support of their motion. This suggests that what defendants seek is a news blackout with respect to this matter. This would mean that no case which attracted substantial publicity and public interest could ever proceed to trial unless protected by a wall of silence, and, of course, this is not constitutionally permissible under our guarantee of a free press. We are free of the restrictions which England imposes upon its press to assure an accused of a fair trial.[4]

But the right of the press to publish and the right of an accused to a fair trial need not be in conflict. A satisfactory accommodation can be achieved with-

3. United States v. Kahaner, 204 F.Supp. 921, 924 (S.D.N.Y.1962) (footnotes omitted).

4. See United States v. Kahaner, 204 F. Supp. 921, 923 n. 6 (S.D.N.Y.1962).

out the forfeit of either right. This calls upon an enlightened press to exercise self-restraint so that it does not, by pretrial publicity, jeopardize a defendant's right to an impartial jury and a fair trial. Such voluntary restraint does not prevent the news media from reporting events upon the trial or from keeping the public informed, or from pursuing its time honored role of exposing corruption wherever it exists. It simply means that pretrial reporting be sensitive to the constitutional right to an accused to due process of law.

■ The discussions and comments by the news media following publication of the recent reports on fair trial—free press [5] have reflected recognition of the need for an accommodation between the two great and basic constitutional rights. This court is confident that as the case moves forward to trial a responsible press, which, as the Supreme Court has noted, "has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field," [6] will respect each defendant's right to a fair trial. The effective administration of justice is defeated when an accused's right to be tried by a fair and impartial jury is foreclosed by prejudicial publicity.

■ The movants also urge as a ground for continuance to the Fall a grant of certiorari by the Supreme Court in a case involving the substantive statute, 18 U.S.C., section 1952, which is the basis of the conspiracy charge in this case.[7] Questions presented under the writ of certiorari include "whether the indictment against the petitioner was constitutionally deficient in that it was based upon a statute which is unconstitu-

tional." This latter question is but one of five subsumed under a broader question. This broader issue in turn is one of seven such presented under the grant of the petition. The affirmance by the Eighth Circuit Court of Appeals of the judgment of conviction was principally upon a search and seizure issue.

In view of the fact that the constitutionality of section 1952 is one of at least eleven issues before the Court, and in view of the fact that the Eighth Circuit gave this issue scant treatment in an opinion principally concerned with the search and seizure issue, it is problematical the constitutional issue will be reached in the *Spinelli* case.[8] Moreover, the appeal, which has been placed on the Summary Calendar, is yet to be heard, and its pendency does not warrant a postponement to the Fall.

### MOTION FOR SEVERANCE

■ The defendant Corallo moves for a severance from the defendant Rappaport on the ground that the latter's testimony before the grand jury and statements to the prosecution, if admitted upon trial, will have a prejudicial spill-over effect. The government states with respect to Rappaport, as it has previously as to all defendants, that it does not intend to introduce in its direct case any post-conspiracy testimony or statement. This requires denial of Corallo's application.

■ The defendant Corallo (joined by the defendants Fried, S. T. Grand, Inc. and Motto) further moves for a severance from Rappaport on the ground that his defense might be inconsistent with that of Rappaport's; also, upon the ground

5. American Bar Association Committee on Minimum Standards for the Administration of Criminal Justice, Standards Relating to Fair Trial and Free Press, in Reardon, The Fair Trial-Free Press Standards, 54 A.B.A.J. 343, 347–51 (1968); Committee on the Operation of the Jury System, Judicial Conference of the U.S., Report on the "Free Press-Fair Trial" Issue (1968).

6. Sheppard v. Maxwell, 384 U.S. 333, 350, 86 S.Ct. 1507, 1515, 16 L.Ed.2d 600 (1966).

7. Spinelli v. United States, 382 F.2d 871 (8th Cir. 1967), cert. granted, 390 U.S. 942, 88 S.Ct. 1025, 19 L.Ed.2d 1130 (March 4, 1968).

8. Cf. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 345–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

that evidence as to Rappaport's acts, declarations and statements, admissible only against him, would be prejudicial to Corallo and his codefendants. The problem is a usual one in conspiracy cases and the rights of all defendants can be adequately protected by appropriate admonitory instructions to the jury.[9] The motion is denied.

**9.** See Lutwak v. United States, 344 U.S. 604, 615–19, 73 S.Ct. 481, 97 L.Ed. 593 (1953); United States v. Houlihan, 332 F.2d 8, 15 (2d Cir.), cert. denied, 379 U.S. 828, 859, 85 S.Ct. 56, 115, 13 L.Ed. 2d 37, 61 (1964); United States v. Kahaner, 203 F.Supp. 78, 80–83 (S.D.N.Y. 1962). See also Dauer v. United States,

189 F.2d 343 (10th Cir.), cert. denied, 342 U.S. 898, 72 S.Ct. 232, 96 L.Ed. 672 (1951); United States v. Cohen, 124 F. 2d 164, 165–66 (2d Cir. 1941), cert. denied sub nom. Bernstein v. United States, 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210 (1942).