**UNITED STATES of America ex rel.
Nathaniel ROBERTS, Appellant,**

v.

**Howard YEAGER, Warden, New Jersey
State Prison.**

**No. 17139.**

United States Court of Appeals
Third Circuit.

Submitted on Briefs June 4, 1968.

Decided Nov. 4, 1968.

Nathaniel Roberts, pro se.

Leo Kaplowitz, Prosecutor of Union County, Elizabeth, N. J. (Arthur J. Timins, Asst. Prosecutor, on the brief), for appellee.

Before HASTIE, Chief Judge and STALEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Chief Judge.

Nathaniel Roberts, a New Jersey state prisoner serving a life term pursuant to a conviction for murder, is here appealing the district court's denial of his petition for a writ of habeas corpus. Among the appellant's contentions is a claim that his conviction is invalid because he was compelled to stand trial at a time when he lacked such mental capacity as a defendant must possess in order that his trial may satisfy the constitutional standard of due process of law imposed by the Fourteenth Amendment.

The record of the state proceedings shows that neither before nor during the trial did the defendant's counsel contend that his client was incapacitated from standing trial. It was contended that the defendant had been legally irresponsible because of mental illness at the time of the homicide. Thereafter, the trial judge instructed the jury, properly under the state law,[1] that if it should find the accused not guilty because of insanity at the time of the crime it should then determine whether that condition persisted so that he should be committed to an appropriate institution. However, since the jury did not find the accused insane at the time of the homicide and did find him guilty of murder, it did not

1. N.J.S. 2A:163-3, N.J.S.A.

include in its verdict any statement concerning his mental condition at the time of trial.

 Moreover, a claim that a defendant is incapable of standing trial does not present the same considerations as a claim that he was legally irresponsible for his criminal behavior, though both claims may be based upon mental aberration. In common law tradition, controversies about criminal responsibility have been resolved by inquiry into capacity to understand the nature and character of conduct and to distinguish right from wrong. In contrast, a claim of trial incapacity brings into question the ability of the accused to consult effectively with his lawyer and to supply him with information relevant to the matter charged and his involvement, if any, in it. Dusky v. United States, 1960, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824.

 The nature of this legal distinction and its significance here are highlighted by the evidence concerning the defendant's mentality that appears in the state trial record. Psychiatrists and a psychologist, both the experts called by the defendant and those summoned by the prosecution, testified that the accused was well oriented in the spheres of time, place and person and that his memory was adequate. They found him able to concretize but deficient in conceptualizing and in syllogistic reasoning. This testimony, though not conclusive, was affirmative evidence of capacity to stand trial, since orientation, memory and ability to concretize are principal elements in a client's ability to convey full and correct information to his attorney. On the other hand, the defendant exhibited inability to conceptualize, to reason logically, and to generalize from particular examples,[2] deficiencies which related directly to the issue of legal responsibility, but may well have been less significant than adequate memory and satisfactory orientation as determinants of ability to inform and to assist counsel.

We have considered that there also was evidence that the defendant's I.Q. was 75, that his formal education had ended after the third grade, that mental illness appeared in his ancestral history, and that defense counsel pointed out to the jury that his client seemed more amused by the course of the trial than concerned. We are not persuaded that for present purposes, any or all of these outweighed the undisputed psychiatric testimony of present orientation, memory and capacity to communicate, especially when defense counsel had not experienced sufficient difficulty in consultation and discussion with his client to lead him to claim that the accused was unable to stand trial.[3]

In the light of all that was before the trial judge, we cannot say that he deprived the accused of procedure essential to fair trial. And it is only such deprivation that can properly be urged as a denial of due process now. Certainly, the evidence did not overwhelmingly indicate incapacity to stand trial. Short of that, we cannot say that the indicia of incapacity were so impressive and those of capacity so slight that fundamental fairness dictated that the trial judge, acting *sua sponte*, should have

2. According to the testimony, the defendant could describe and relate to particular occurrences and literal meanings but he could not generalize from them or conceptualize their implication. Thus, given several proverbs he comprehended the stated examples as familiar experiences but not their general significance. To him, "a stitch in time saves nine" was no more than a statement of advantage to be gained by timely needlework. Abstraction was beyond his capacity. Indeed, events and verbal expressions had such narrow meaning to him that defense experts described him as a schizophrenic, though he had not developed the familiar secondary symptoms of delusions and hallucinations.

3. This is not to suggest that any mental incapacity was or could be waived. Pate v. Robinson, 1966, 383 U.S. 375, 384, 385, 86 S.Ct. 836, 15 L.Ed.2d 815. But counsel's conduct at least tended to confirm the expert testimony as to orientation and capacity to communicate.

interrupted the trial and instituted a formal inquiry into this matter.

In reaching this conclusion, we have compared the facts in this case with those in Pate v. Robinson, 1966, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, where the Supreme Court found that the trial judge was constitutionally obligated to institute an inquiry, *sua sponte*, into capacity to stand trial. Several significant differences distinguish the two cases. In *Pate* it appeared that, several years before the crime there charged, the defendant had been committed for eight months to a mental hospital. He had experienced delusions, periods of withdrawal and loss of memory. He had committed a prior homicide, killing his infant son. He had repeatedly committed or threatened acts of violence upon other persons. There was other evidence of bizarre and irrational behavior. Additional evidence concerning his mental condition had been proffered but excluded. His attorney had stated repeatedly during the trial that his client was incapable of standing trial, though he had not demanded a formal hearing on this issue. In the present case less impressive indicia of irrationality were offset by substantial indicia of capacity to stand trial. Therefore, we are not persuaded that the Supreme Court would or that we should reach the *Pate* conclusion here.

As an entirely separate point the appellant complains that the New Jersey trial court violated a constitutional requirement of Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, by taking testimony and making its determination that a confession was voluntary in the presence of the jury. However, in Pinto v. Pierce, 1967, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31, the Supreme Court has now made it clear that where during a trial no objection has been interposed to the procedure of determining voluntariness in the jury's presence and there is no showing of probable prejudice, the conviction need not be invalidated. We are satisfied that this is such a case.

Finally, it is urged that the trial court imposed upon the defendant the burden of proving the involuntariness of his confession. Our examination of the record discloses that the court did not impose the burden in question upon the defendant.

The judgment will be affirmed.