**UNITED STATES of America ex rel. Joseph GALLO, Petitioner,**

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, STATE BOARD OF PAROLE, Respondent.**

**No. 71 Civ. 4198.**

United States District Court, S. D. New York.

Jan. 3, 1972.

Paul Vladimir, Forest Hills, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City by Joel Lewittes, Asst. Atty. Gen., of counsel, for respondent.

POLLACK, District Judge.

The application for a writ of Habeas Corpus is denied. There is no merit in any of the grounds asserted for the issuance of a writ.

The petitioner was convicted in 1961 in the New York State Court of General Sessions, New York County, of conspiracy with others to extort an interest in the check cashing business and in bars and grills owned by one, Moss, as well as of the substantive offense of actual attempts to extort such interests by use of wrongful force and creation of fear of wrongful injury to the person of Moss.

Petitioner's trial was subjected to months of delay by maneuvers of the petitioner in relation to the attorney to represent him. These were finally ended by the Court's assignment of an able, experienced lawyer to represent the petitioner. This was not to petitioner's liking and he behaved accordingly, electing to stand mute and resisting any cooporation with his assigned counsel. The trial itself was brief—it was completed in less than three days. At the opening of the trial petitioner announced that he would remain mute until he could have the services of the lawyer he wanted to represent him. That lawyer was unavailable—ill, aged and located in Florida.

Petitioner's conviction was affirmed on appeal in People v. Gallo 19 A.D.2d 620, 241 N.Y.S.2d 383 (1st Dept. 1963); leave was denied to appeal to the New York Court of Appeals and certiorari to the Supreme Court was de-

nied, 376 U.S. 953, 84 S.Ct. 971, 11 L. Ed.2d 972 (1964). State *coram nobis* relief was then sought and denied on the claim that petitioner had been deprived of his right to trial counsel of his choice. This ruling was affirmed on an appeal. Petitioner then tried out this claim in the federal court and coupled it with a claim that he was denied a fair trial because of undue and prejudicial pre-trial publicity. This federal attempt failed; the petition was dismissed for failure to exhaust state remedies. (N. D.N.Y.1966, Port, J.) (66 Civ. 334).

In 1967, petitioner sought habeas corpus relief in this District and Judge Weinfeld found the reasserted claim of denial of counsel of his choice to be "specious" and determined that the publicity claim had not been passed on in the state courts. United States ex rel. Gallo v. Follette, 270 F.Supp. 507 (S.D. N.Y.1967).

Defendant's next move was in Dutchess County, Supreme Court, where he claimed that his sentence was beyond the judge's power; he claimed that he could not be subjected to consecutive sentences because the conspiracy and substantive counts were posited on the same acts. This identical issue had been unsuccessfully raised theretofore on his appeal from the judgment of conviction. Habeas corpus was denied, April 8, 1969, the order of denial was affirmed, People ex rel. Gallo v. Warden, 32 A.D.2d 1051, 303 N.Y.S.2d 752 (2d Dept. 1969), and leave was denied to appeal to the New York Court of Appeals, 26 N.Y.2d 609, 307 N.Y.S.2d 1026, 255 N.E.2d 785 (1970).

In 1970, petitioner again sought state *coram nobis* which was denied without a hearing. In that proceeding, he raised the claim of prejudicial publicity in the pre-trial and trial periods. He claimed additionally that the trial Judge improperly had neglected to raise on his own initiative the question of petitioner's competency at trial, albeit there was no assertion that petitioner, in fact, was incompetent. The order of denial of *coram nobis* was affirmed on appeal, with-

out opinion, 36 A.D.2d 796, 319 N.Y.S.2d 388 (1st Dept. 1971) and leave to appeal further was denied.

On March 10, 1971, the petitioner was conditionally released from the correctional facility at Ossining to the custody of the State Board of Parole in the New York Department of Correctional Services pursuant to N.Y. Correction Law, § 212. He had been sentenced on December 21, 1961, to consecutive terms which amounted together to not less than 7 years 3 months and not more than 14½ years.

*Prejudicial publicity as tainting the trial*

Petitioner asserts here that his trial was not fair because he and his family were targets in advance and during trial of massive and hostile publicity.

Petitioner concedes that before Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) a defendant was required to prove a direct connection between the publicity and the alleged denial of a fair trial, Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). In this case, the record fails to establish, indeed it negates, any connection between the publicity and the veniremen or any adverse influence on the impartiality of the jurors selected. Consequently, petitioner suggests that "The law is now settled that the community may be so permeated with prejudice as to deny a fair trial." *But cf.* United States v. Kahaner, 204 F.Supp. 921, 924 (S.D.N.Y.1962); United States v. Cohn, 230 F.Supp. 589, 590 (S.D.N.Y. 1964); Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). No authority is cited for this broad contention. At all events, the petitioner's community prejudice test fails here since the members of the community chosen as jurors were questioned on the publicity and nothing in the record supports any notion of knowledge of the publicity by the jurors selected.

The publicity in this case dealt in significant part principally with defendant's brother, an attempted garrotting of the brother, the serious wounding of a policeman who foiled that attempt, the investigation that followed thereon and the murder of an associate of the Gallo brothers. The press articles also dealt with organized crime groups at war with each other. During most of this publicity, the instant case was in adjournment—from August 7 to October 23; after October 23, much of the publicity ebbed. As in United States v. Persico, 425 F.2d 1375, 1380 (2d Cir. 1970), where the claim of prejudicial publicity was rejected, the publicity did not deal with the issues of petitioner's guilt.

While there undoubtedly was a large amount of publicity placing the Gallo family members in an unfavorable light, it must be recognized that they were figures who had come to the attention of the public over the years and that news coverage did not necessarily carry with it a probability of prejudicial effect on the defendant's trial or even an awareness of the Gallos by the veniremen. The petitioner's trial was very brief and not conducted in any sense in a carnival atmosphere. No prejudicial statements emanated from the prosecutor or from the trial judge. To the contrary, the only controversy was over defendant's persistence in seeking to delay the start of the trial with demands for an unavailable and ailing lawyer whom he wanted as his trial lawyer and in demanding that no trial be had meanwhile. This form of delay was indulged until it became intolerable and unjustified. An able, experienced criminal lawyer of unquestioned ability was then assigned to defendant by the Court. Defendant elected to stand mute in protest against his inability to have his own way.

It is clear that the veniremen were questioned on voir dire about whether they had read or heard about the case. Defendant had the untrammeled opportunity to question the veniremen but he apparently instructed his assigned attorney to stand mute and he elected not to participate in the questioning. That election does not aid the defendant now; to the contrary, it reinforces the notion that the jury selected was free of any taint on the score of prejudicial pre-trial publicity in the eyes of the defendant at the time.

The Judge carefully cautioned the jury selected to avoid any taint that news coverage might create. He said at the outset of the trial:

Now, there's a third caution that I should like to add. You have had questions put to you concerning the possibility that you read or heard about this case. Now that you are sworn jurors it is your duty not to read about the case and not to listen to radio or television about it. I appreciate that that is going to be burden on you but it's a burden that comes with your oath of office as a judge [sic] and you must bear it. If you see anything in any newspaper about this case, do not read it. If you are listening to the radio or television and you hear anything said about this case or the name of this defendant, don't listen to it. Decide this case on what you hear in this courtroom; this is where the case is tried. It is not tried outside, it is not tried in the newspapers or on the radio or on television.

The totality of the circumstances contradicts the validity of petitioner's attack on the fairness of the trial—nothing in the record impairs the impartiality of the jury selected. The fitness of the jurors had to be challenged at inception of the trial to give the Court the opportunity to replace anyone shown to be biased. United States v. Ragland, 375 F.2d 471, 475 (2d Cir. 1967). The point involved is waived unless asserted at the trial or upon direct appeal upon conviction (no such assertion was made here). United States ex rel. Agron v. Herold, 426 F.2d 125, 127 (2d Cir. 1970).

In the absence of any showing that the undesirable publicity came to the attention of the prospective jurors, there is no legal basis for complaint on the score of pre-trial publicity of a potentially prejudicial nature. Any other rule would mean that the verdict of an unprejudiced jury could be voided, not because the jury was subjected to adverse publicity concerning a defendant on trial, but because members of the public in general had been stirred up or might have been.

### The omission of the Judge to inquire into Gallo's competency

The petition suggests that the self-destructive position which the defendant took during the court proceedings mandated a hearing on his competency. In this connection, the present lawyer points out that petitioner did not participate in his trial or cooperate with his assigned counsel. Rather, "He was obsessed with the idea implanted firmly in his sick mind that no one but David Price, Esq. could represent him."

At the threshold it is to be noted that the defense of insanity or incompetency was never interposed at trial. Nor, prior to sentence, was the Court put on notice that the defense attorneys were experiencing any difficulty in communicating with defendant.

The factual record negates any obligation on the trial Judge because of defendant's behavior to question defendant's competency to stand trial. This is not to say that defendant's wisdom and choice of trial strategy are above question. Competency to stand trial is defined in Dusky v. United States, 362 U. S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

In the 1970 *coram nobis* proceeding, *supra*, the Judge mentioned that petitioner was examined by a psychiatrist before sentence. Following the advice of his attorney, he refused to answer the doctor's questions other than those relating to identification. The psychiatrist found that the defendant had no psychiatric disorder.

The defendant's history of a psychiatric condition in 1950, which was some 10 or more years before the trial and the sentence being considered here, does not overturn the finding made in 1961 that the accused was competent in 1961. United States ex rel. Rizzi v. Follette, 367 F.2d 559 (2d Cir. 1966). The indicia of peculiarity and captious behavior, when considered in the context of a well-defined plan of action to avoid being tried, together with all the facts concerning this defendant's brushes with the law theretofore, were hardly enough to require a formal inquiry by the Judge, acting *sua sponte*, into the defendant's competency or insanity. United States v. Silva, 418 F.2d 328, 331 (2d Cir. 1969); United States ex rel. Roberts v. Yeager, 402 F.2d 918, 919 (3rd Cir. 1968).

There was no abuse of discretion on the part of the Judge calling for federal intervention for not ordering *sua sponte* a competency hearing.

### Consecutive sentences

Petitioner contends he was subjected to double punishment by the consecutive sentences for conspiracy and substantive offenses because the proof involved a unity of time, place and action, and identity of complainant and defendant. No cognizable federal question is raised by this claim.

The consecutive sentences were proper. People v. Tavormina, 257 N.Y. 84, 177 N.E. 317 (1931); Brown v. United States, 167 F.2d 772, 774, (8th Cir. 1948). The Courts of New York, in passing on the same contention made there, People v. Gallo, 19 A.D.2d 620, 241 N.Y.S.2d 383 (1st Dept. 1963); People ex rel. Gallo v. Warden, 32 A.D. 2d 1051, 303 N.Y.S.2d 752 (2d Dept. 1969) permissibly construed the New York legislative purpose to permit these sentences in consecutive form. In each instance, leave to appeal to the New York Court of Appeals and certiorari to the Supreme Court were denied. The state court decisions on the construction of the statute authorizing the consecu-

tive sentences, § 1938 N.Y. Penal Law, are determinative. United States v. Jones, 365 F.2d 675 (2d Cir. 1966). No constitutional standards were violated thereby, United States v. Kramer, 289 F.2d 909, 916 (2d Cir. 1961); Pinkerton v. United States, 328 U.S. 640, 644, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); Pereira v. United States, 347 U.S. 1, 11, 74 S.Ct. 358, 98 L.Ed. 435 (1954).

Petition denied.

So ordered.