**UNITED STATES of America,**

v.

**Edwin P. WILSON, Defendant.**

**No. S 83 Cr. 69.**

United States District Court,
S.D, New York.

Sept. 27, 1983.

---

**1424**

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the U.S.; Eugene Neal Kaplan, Kenneth I. Schacter, Asst. U.S. Attys., New York City, of counsel.

Michael G. Dowd, Kew Gardens, N.Y., for defendant.

## OPINION

EDWARD WEINFELD, District Judge.

Edwin P. Wilson is named in an indictment returned by a grand jury in this district containing seventeen counts, all of which center about an alleged plot to assassinate witnesses or potential witnesses and other persons involved in prosecutions against him then pending or already concluded in the United States District Courts of Texas, Virginia and Washington, D.C. While awaiting trial or after trial and conviction in one or more of the latter prosecutions, Wilson was confined at the Metropolitan Correctional Center, New York City. Following his indictment in this district and while awaiting trial on the seventeen-count indictment, he was transferred and confined to the Federal Correctional Institution at Otisville, New York. A superseding indictment has been returned, adding an eighteenth count, which charges that while so confined at Otisville, Wilson endeavored to obstruct and impede justice in violation of 18 U.S.C. § 1503—essentially, that he attempted to secure the assassination of a principal witness in the upcoming trial, two Assistant United States Attorneys, his former wife, and others. The charge rests in the main upon information furnished by two inmates, David Vogel and John Randolph, concerning Wilson's alleged solicitation of their aid to effect his plan. Counsel for Wilson, substituted for his former counsel on the original indictment shortly before the scheduled trial date, has made an omnibus motion for relief that, after argument, is disposed of as follows:

1. RENEWAL OF MOTION PREVIOUSLY MADE BY WILSON'S FORMER COUNSEL TO DISMISS THE INDICTMENT FOR LACK OF IN PERSONAM JURISDICTION AND LACK OF PROPER VENUE AS IT RELATES TO THE EIGHTEENTH COUNT OF THE SUPERSEDING INDICTMENT.

This motion is denied for the reasons set forth in the denial of the prior motion.[1]

2. BILL OF PARTICULARS.

Granted upon consent of the government.

3. DISCOVERY PURSUANT TO FED. R.CRIM.P. 16.

■ Except as consented to by the government, this motion is denied. Its wide-ranging scope suggests that the defendant is not seeking information to which he is entitled under the discovery rules to enable him to defend against the current charge, but that he is engaged upon a fishing expedition which, if permitted, would in effect require the government to disgorge material contained in its internal investigatory files.

4. HEARING ON AUDIBILITY OF TAPE RECORDINGS OF CONVERSATIONS OF WILSON ON SEPARATE OCCASIONS WITH VOGEL AND RANDOLPH.

The motion for such a hearing was granted. At the hearing, attended by the prose-

---

1. *United States v. Wilson*, 565 F.Supp. 1416, 1421–25 (S.D.N.Y.1983).

cution and Wilson's counsel, recordings of Wilson's conversations with Vogel on July 27, 1983 and with Randolph on August 3 and August 7, 1983 were heard. At the conclusion the Court found they were of sufficient audibility to warrant their admission to the jury if otherwise qualified for admission into evidence.[2]

5. MOTION TO SUPPRESS STATEMENTS MADE BY WILSON TO VOGEL AND RANDOLPH ON A CLAIM THEY WERE OBTAINED IN VIOLATION OF DEFENDANT'S RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES, OR, IN THE ALTERNATIVE, FOR A HEARING ON THE ISSUE.

■ The defendant contends that while confined at Otisville, statements made by Wilson to Vogel and Randolph were "deliberately elicited" by government agents and therefore should be suppressed under the authority of *United States v. Henry*[3] and *Massiah v. United States.*[4] However, the claim is without factual support. It rests solely upon the conjectural allegations made by his counsel based upon hearsay statements. There is no contradiction of the government's statement that prior to about the middle of June 1983 conversations with Randolph and Vogel were without government participation or knowledge; that both were acting on their own; that thereafter Randolph and Vogel, on their own initiative, informed prison officials at Otisville of Wilson's alleged new criminal activities; that subsequently on July 15, 1983, by written communication, they also brought the matter to the attention of the United States Attorney, indicating new criminal activity by Wilson; and that the tape recordings were obtained solely in the investigation of a new crime and thus beyond the pale of *United States v. Henry* and *Massiah v. United States.*[5] Upon the conclusion of that hearing, in addition to the finding of audibility, already noted, the Court further found that Vogel and Randolph, prior to each recording, were explicitly instructed by an FBI agent that in any conversation with Wilson they were not to discuss trial or defense strategy or any information concerning the then pending indictment against him. There is no factual matter before the Court at this time to impugn the government's assertion that its sole purpose in making contact with Wilson through Vogel and Randolph was to pursue a good faith investigation of a new and ongoing crime. Upon the present state of the record, there is no basis either for a hearing[6] or for the suppression of the statements made to Vogel and Randolph.

6. THE MOTION FOR A HEARING "FOR THE PURPOSE OF CONTROVERTING THE SEARCH WARRANT."

■ Wilson's cell was searched and certain material seized pursuant to a search warrant issued by a United States Magistrate based upon an affidavit of an agent of the FBI which detailed therein information received from Vogel and Randolph as to their conversations with Wilson with respect to the latest plot to murder witnesses and other persons. The FBI agent, in addi-

2. *Brown v. Harris,* 666 F.2d 782 (2d Cir.1981), *cert. denied,* 456 U.S. 948, 102 S.Ct. 2017, 72 L.Ed.2d 472 (1982); *United States v. Provenzano,* 615 F.2d 37, 40 (2d Cir.), *cert. denied,* 446 U.S. 953, 100 S.Ct. 2921, 64 L.Ed.2d 810 (1980); *United States v. Vazquez,* 605 F.2d 1269, 1272 (2d Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979).

3. 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

4. 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

5. *United States v. DeWolf,* 696 F.2d 1, 3 (1st Cir.1982); *United States v. Moschiano,* 695 F.2d 236, 240–43 (7th Cir.1982).

6. *See United States v. Boylan,* 620 F.2d 359, 362 (2d Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980). *Cf. United States v. Ajlouny,* 629 F.2d 830, 839 (2d Cir. 1980) (no adversary hearing necessary to contest order authorizing electronic surveillance), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981).

tion to setting forth that information, swore that both were confidential informants of known reliability; that they had testified in the past in federal and state trials; that their testimony had been acceptable and reliable and resulted in several felony convictions; and that each had provided information to federal investigative agencies in the past. A reading of that affidavit compels the conclusion that the instant request for a hearing is without substance. The affidavit abundantly establishes probable cause for the issuance of the search warrant. Based upon the totality of circumstances set forth in the FBI agent's affidavit, the Magistrate had a substantial and practical common sense ground for his determination of the existence of probable cause of criminal conduct.[7] The probability of criminal activity was compelling. The motion is denied.

### 7. THE MOTION THAT DEFENDANT BE RELIEVED OF ANY RESPONSIBILITY UNDER THE CLASSIFIED INFORMATION PROCEDURES ACT ("CIPA" OR "THE ACT")[8] ON THE GROUND THAT IT VIOLATES THE DEFENDANT'S CONSTITUTIONAL RIGHTS.

■ The Act was designed to establish procedures to harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest. Preliminarily, it is noted that Wilson's claim that he may require classified information in his defense is vaguely conjectural—indeed, upon inquiry during the course of the argument of this motion it is far from clear by the response of his counsel that any such material would be relevant with respect to any of the eighteen counts in the superseding indictment. Those charges relate to acts, conduct, or conversations that allegedly occurred in furtherance of the objectives of the plot to murder witnesses and others, all of which

are alleged to have occurred from on or about November 1, 1982 and through August 1983. The defendant's service in the CIA and his official access to classified material appear to have terminated many years ago. Under the circumstances, it is difficult to accept counsel's vague and general observation that some classified material may have relevance and be admissible upon the trial with respect to one or more witnesses who may be called to testify on the basic issue—whether the defendant, commencing in November 1982 and continuing through August 1983, engaged in conspiratorial or individual conduct in a plot to murder witnesses and other persons.

■ In his constitutional claims, Wilson first contends that the use of the terms "classified information" and "national security" renders CIPA void for vagueness. He argues that since the Act predicates a defendant's right to disclose information at his trial upon timely notification in advance of trial of his intention to disclose such information,[9] a defendant is under an "impossible burden" because classification of information or secrets is an executive function and beyond his knowledge. Accordingly, Wilson claims he "may not" have the "broad overview" to determine either what is "classified information" or is required to give the statutory notice, and as a consequence the Court upon his trial "may preclude" admission of relevant evidence in support of his defense. This theoretical construct must yield to the fact that section 1 of the Act defines "classified information" as "any information or material that has been determined by the United States Government pursuant to an executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security and any restricted data, as defined in paragraph (r) of section 11 of the Atomic Energy Act of 1954 (42 U.S.C. § 2014(y))." The term "na-

---

7. *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *see also United States v. Peyko,* 717 F.2d 741 (2d Cir.1983) (per curiam).

8. Pub.L. No. 96–456, 94 Stat. 2025 (1980).

9. CIPA §§ 5(a), (b).

tional security" is defined in the Act as "the national defense and foreign relations of the United States." The terms so defined in the Act convey a reasonable degree of certainty to a defendant of what is required.[10] As the Supreme Court has stated: "The test applied to determine whether a statute is void for vagueness is 'whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' "[11]

■ In addition, unless a statute infringes on First Amendment rights, it usually will be evaluated "in the light of the facts of the case at hand."[12] Finally, courts will not hold a statute void for vagueness "if the person challenging it had sufficient warning that his own conduct was unlawful."[13] Since Wilson has had considerable experience as a former CIA agent, it is fatuous for him to suggest he must speculate as to what is or what is not required in order to invoke the procedures of CIPA. It is significant that he makes no contention that he does not know the difference between "classified" and "unclassified" information, or that he is unaware of the term "national security" as defined in the Act.

■ Wilson also challenges the Act on the basis that it requires him to "produce his entire factual defense" prior to trial. The defendant reads too much into the statute. The notice rules of which Wilson complains require only that a "brief description of the classified information" be provided. In any event, in pretrial conferences defense counsel had no difficulty disclosing the evidentiary "theory" on which he bases

the alleged relevance of any classified information to the upcoming trial—that such information will tend to show Mr. Wilson's close relations to several of the target witnesses and thus purportedly controvert the government's proof of motive. Defense counsel has not shown how any further disclosure by Wilson would prejudice his trial strategy in any way. As already noted, it is highly questionable that any classified information has a bearing on the charges contained in the instant indictment.

The further grounds of Wilson's challenge to the constitutionality of the Act parallel those advanced in another prosecution, each of which was found wanting by Chief Judge Northrop of the District Court of Maryland in *United States v. Jolliff.*[14] This Court agrees for substantially the same reasons as there advanced in rejecting the claims. Wilson has asserted no tangible interest that affects his rights. Any valid constitutional attack that Wilson might have is not ripe for adjudication.[15] The motion is denied.

## 8. JURY SELECTION.

■ (a) The defendant moves that the standard proposed by the American Bar Association be adopted by the Court to determine challenges for cause based upon pretrial publicity. The government opposes the motion, particularly since one standard provides that a prospective juror who has been exposed to significant pretrial information "shall be subject to challenge for cause without regard to the prospective juror's testimony as to the state of his mind."[16] In effect this requires a per se

---

**10.** *United States v. Pope,* 189 F.Supp. 12, 21 (S.D.N.Y.1960).

**11.** *Jordan v. DeGeorge,* 341 U.S. 223, 231–32, 71 S.Ct. 703, 708, 95 L.Ed. 886 (1951).

**12.** *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

**13.** *Robinson v. Berman,* 594 F.2d 1, 2 (1st Cir. 1979).

**14.** 548 F.Supp. 229 (D.Md.1981).

**15.** *Cf. Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 736 n. 15, 100 S.Ct. 1967, 1977 n. 15, 64 L.Ed.2d 641 (1980) (mere enforcement authority does not create a case or controversy).

**16.** ABA Standards Relating to the Administration of Criminal Justice 8–3.5(b) (1978): "... A prospective juror who has been exposed to and remembers reports of highly significant information, such as the existence or contents of a confession or other incriminating matters that may be inadmissible in evidence, or substantial amounts of inflammatory material, shall be

disqualification of jurors based upon exposure to pretrial publicity. Such a per se rule would make it virtually impossible to obtain a jury in a case that in this day of modern journalism may be the subject of extensive mass media publicity. Such publicity

> underscores the court's duty to question jurors on the voir dire with painstaking care to assure the defendants an impartial jury and a fair trial. Publicity, in and of itself, does not foreclose a fair trial. The courts do not function in a vacuum and jurors are not required to be totally ignorant of what goes on about them. We live in a world of reality.[17]

As recently stated by our Court of Appeals:

> Jurors need not be totally ignorant of a defendant in order to be fair and unbiased. *See Dobbert v. Florida,* 432 U.S. 282, 302 [97 S.Ct. 2290, 2302–03, 53 L.Ed.2d 344] (1977); *Murphy v. Florida,* 421 U.S. 794, 798–800 [95 S.Ct. 2031, 2035–2036, 44 L.Ed.2d 589] (1975). Even where a prospective juror has formed some preconceived opinion as to the guilt of the accused in the case on trial the juror is sufficiently impartial if he or she can set aside that opinion and render a verdict based on the evidence in the case. *Murphy v. Florida,* 421 U.S. at 799–800 [95 S.Ct. at 2035–2036]; *Irvin v. Dowd,* 366 U.S. 717, 722–23 [81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751] (1961); *United States v. Murray,* 618 F.2d 892, 899 (2d Cir. 1980).[18]

The determination of a prospective juror's qualification as a fair and impartial juror is to be determined upon the voir dire. The motion to apply the standard proposed by the American Bar Association is denied.

■ (b) The defendant moves that his attorney be permitted to conduct the voir dire as authorized by Rule 24(a) of the Federal Rules of Criminal Procedure.

This Court, throughout its more than three decades of judicial service, has always conducted the voir dire examination in civil and criminal cases. Counsel for the parties in advance of trial are invited to submit proposed questions that, if proper and not repetitive, are included in the Court's questioning of the jurors. Based on that experience this Court is persuaded beyond peradventure of doubt that that method, without exception, has resulted in the empanelling of fair and impartial juries. They have been selected expeditiously and with full protection of a defendant's constitutional right to an impartial jury. And this has been true of cases that have attracted in advance of trial the widest publicity in the news media over extended periods of time.[19]

It is a blunt fact that at times the thrust of inquiry where lawyers conduct the voir dire, as in the state courts, is not to obtain a fair and impartial jury, but rather by a calculated effort to establish a rapport with a juror or jurors in the hope of encouraging partiality in favor of the client.[20] It is notorious that in the state courts, where lawyers conduct the examination, the selection of a jury may take longer than the

---

subject to challenge for cause without regard to the prospective juror's state of mind."

**17.** *United States v. Kahaner,* 204 F.Supp. 921, 924 (S.D.N.Y.1962).

**18.** *United States v. Moon,* 718 F.2d 1210, 1218–19, (2d Cir.1983).

**19.** *United States v. Corallo,* 284 F.Supp. 240 (S.D.N.Y.1968); *United States v. Kahaner,* 204 F.Supp. 921 (S.D.N.Y.1962).

**20.** While lawyers often speak of the constitutional importance of the Seventh Amend-

ment, namely, a guaranteed trial by an impartial and unbiased jury, in fact they do not seek an impartial jury. What they generally want selected is a jury fairly disposed toward the principles of their client's cause....

We know that the experienced lawyers, the ones who do know how to question jury panels, are aware that they are trying to create a climate of understanding and rapport, not only between themselves and the jury, but between the jurors themselves, as to the objectives they seek.

Proceedings of the 1982 Annual Judicial Conference of the Second Circuit of the United States; 97 F.R.D. 545, 558 (1983) (remarks of Clarie, J.); *see id.* at 562, 628–29, passim.

trial proper and in cases that have received publicity, even a month or more may be consumed before a jury is empanelled, which Chief Judge Learned Hand described as "the interminable examinations sometimes extending for weeks on end," [21] all with little effect on the ultimate fairness of the trial. It was just such a situation that led this Court in a habeas corpus review of a state court judgment of conviction to observe:

> The voir dire . . . is of critical importance to protect a defendant's Sixth Amendment right to a trial free of prejudice. However, the right is not a license to 'propound any question' nor does it mean that
>
>> limitless time must be devoted to preliminary voir dire. . . . [T]here are countervailing state interests in the expeditious conduct of criminal trials and the avoidance of jury intimidation. These interests bulk larger as the possibility of uncovering prejudice becomes more attenuated. . . . (*Ham v. South Carolina,* 409 U.S. 524, 533 [93 S.Ct. 848, 853–54, 35 L.Ed.2d 46] (1973) (Marshall, J., concurring in part and dissenting in part).
>
> Indeed, had the trial judge not exercised her discretion and permitted the injection of extraneous issues, entirely unrelated to the charges against the petitioner, it would have distorted, if not aborted, the essential purpose of voir dire—to obtain impartial and indifferent jurors. The right to the selection of a fair and impartial jury extends to all parties to a litigation. The state, no less than a defendant, is entitled to have the issues in a case determined by a jury, in the words of Lord Coke as 'indifferent as [it] stands unsworne.' [22]

The motion that counsel be permitted to conduct the voir dire is denied. Counsel for the prosecution and defense have been instructed to submit proposed questions.

 (c) The motion that each juror who has been exposed to some form of publicity be questioned out of the presence of other jurors is granted upon consent of the government. The procedure will be in accordance with the two-step procedure approved by our Court of Appeals:

> The judge may inquire of the jury collectively whether it has read a prejudicial article and then, as here, ascertain individually and outside the presence of other jurors the effect of the publicity upon the individual jurors who have in fact read the material in question [citations omitted]. . . . In other words, there is no requirement that each juror must be examined individually to determine whether he has even read the material in question.[23]

## 8. MOTION FOR EXTRA CHALLENGES IN ACCORDANCE WITH ABA STANDARDS RELATING TO FAIR TRIAL AND FREE PRESS § 3.4(c) (1968).

 This matter is governed by the statutes of the United States, the Rules of Court promulgated thereunder, and authoritative court decisions and not by "standards" issued by the American Bar Association. Wilson is the sole defendant to be tried under the indictment.[24] Under Fed.R. Crim.P. 24(b) the Court in cases where "there is more than one defendant," may allow additional peremptory challenges. Since Wilson is the sole defendant, "there is

**21.** *United States v. Dennis,* 183 F.2d 201, 227 (2d Cir.1950), *aff'd,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

The abuses in the State Courts have become so widespread that recently an attempt was made to correct the situation by conforming state practice to that of the federal courts. *See* N.Y. Times, May 4, 1983, at B3, col. 5.

**22.** *St. Lawrence v. Scully,* 523 F.Supp. 1290, 1297–98 (S.D.N.Y.1981).

**23.** *United States v. Tsanas,* 572 F.2d 340, 347 (2d Cir.) (Friendly, J.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978).

**24.** The prosecution, under a stipulation and court order, has been severed as to Erik S. Wilson, who is named in fifteen counts of the original indictment.

no authority in [Rule 24(b)] for according extra challenges to a single defendant."[25]

The motion is denied.

### 9. MOTION THAT DEFENDANT BE SERVED IN ADVANCE OF JURY SELECTION WITH A LIST OF PROSPECTIVE JURORS.

 Under 18 U.S.C. § 3432, a defendant is entitled to pretrial disclosure of a list of the veniremen only when "charged with treason or other capital offense." While the Court may have general discretionary power to grant such relief in non-capital cases,[26] the defendant here has advanced no reason why it should be exercised favorably.

The motion is denied.

---

**25.** *United States v. Gullion*, 575 F.2d 26 (1st Cir.1978). *See Weedin v. United States*, 380 F.2d 657 (9th Cir.1967); *Estes v. United States*, 335 F.2d 609 (5th Cir.1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965).

**26.** *See United States v. Cannone*, 528 F.2d 296 (2d Cir.1975).