**UNITED STATES OF AMERICA**

v.

**Osama AWADALLAH, Defendant.**

**No. 01 CR. 1026(SAS).**

United States District Court,
S.D. New York.

Aug. 2, 2006.

Karl Metzner, Robin L. Baker, Brendan R. McGuire, Assistant United States Attorneys, United States Attorney's Office,

---

Southern District of New York, New York, New York, for the Government.

Jesse Berman, New York, New York, Elizabeth Fink, Sarah Kunstler, New York, New York, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Following a mistrial in May, 2006, defendant Osama Awadallah has moved for a change of venue pursuant to Federal Rule of Criminal Procedure 21(a). Awadallah urges this Court to focus specifically on the final days of jury deliberations culminating in the mistrial. During the "emotionally heated jury deliberations," some jurors "were tearfully discussing their September 11 recollections in the jury room."[1] This turn of events has convinced Awadallah that "New Yorkers are too close to the events of September 11, 2001" for him to receive a fair trial in the Southern District of New York.[2] Awadallah also requests additional peremptory challenges during jury selection based on the same arguments.[3] The Government opposes both of these requests, asserting that the proper response to concerns of juror prejudice "is the use of the existing

jury questionnaire, with follow-up voir dire questioning as needed."[4]

## II. BACKGROUND

### A. The Charges Against Osama Awadallah

Awadallah is a lawful permanent resident of the United States and a citizen of Jordan, who entered this country in April 1999 at the age of nineteen. In the Fall of 2001, Awadallah was living in San Diego, and beginning his second year at Grossmont College, studying English as a Second Language.[5]

On September 20, 2001, Awadallah was approached at his home by a group of FBI agents investigating the terrorist attacks of September 11, and was subsequently questioned for approximately six hours at an FBI office.[6] He was a subject of the FBI investigation because a scrap of paper with the words "Osama 589–5316" was found inside a car abandoned by Nawaf Al–Hazmi, one of the hijackers of American Airlines Flight 77.[7] Agents had matched this number to a phone at a residence where Awadallah had briefly lived nearly two years earlier.[8] On the morning of September 21, 2001, Awadallah was again brought to the FBI office, where he was given a polygraph test, questioned, and eventually arrested as a material wit-

---

**1.** May 20, 2006 Letter from Sarah Kunstler, Counsel to Defendant, to the Court ("Def.Mem.") at 5.

**2.** *Id.*

**3.** *See id.* at 1–2. Awadallah's third and final request is that further questions be included in the jury questionnaire, and the Government objects to this request only in part. The Court's decisions on these issues (noted in italics) are reflected in the revised questionnaire, attached to this Opinion as Exhibit A.

**4.** Government's Memorandum in Opposition to Defendant's Motions for Change of Venue

and Additional Peremptory Challenges ("Opp. Mem.") at 2.

**5.** *See United States v. Awadallah*, 202 F.Supp.2d 17, 21–22 (S.D.N.Y.2002) (*"Awadallah II"*).

**6.** *See United States v. Awadallah*, 202 F.Supp.2d 82, 88–92 (S.D.N.Y.2002) (*"Awadallah IV"*).

**7.** *See id.* at 86.

**8.** *See id.*

ness.[9] Over the following weeks, between September 21 and October 10, Awadallah was held in solitary confinement, and treated as a high security federal prisoner.[10]

On October 10, Awadallah was brought before a grand jury as a material witness. During the course of his grand jury testimony, the prosecutors repeatedly asked Awadallah about his knowledge of Al–Hazmi.[11] Awadallah answered that he had met Al–Hazmi while working at a gas station in San Diego in the Spring of 2000, and had last seen him in December 2000, and described a number of innocuous encounters with Al–Hazmi. The prosecutors also asked Awadallah about Khalid Al–Midhar, another of the hijackers whom Awadallah had seen in Al–Hazmi's company. Awadallah described Al–Midhar's appearance, but said that he did not know the man's name. The Government then showed Awadallah a photocopy of his college exam booklet, in which Al–Midhar's name was written. Awadallah claimed that the handwriting was not his.

Awadallah appeared before the grand jury a second time on October 15.[12] At that time, he testified that he was able to recall that the man with Al–Hazmi had been introduced to him as "Khalid." Awadallah claimed that he did not remember that he knew that name until after his October 10 testimony. Awadallah also testified that the handwriting in his exam booklet was his. He claimed that he had been confused on October 10, and had not recognized the handwriting as his.

## B. Procedural History

Awadallah is charged with two counts of perjury arising from his grand jury testimony: (1) his denial that he knew Al–Midhar's name, and (2) his denial that the handwriting in his exam booklet was his.[13] Jury selection for Awadallah's trial commenced on April 17, 2006 and the trial began on April 19, with closing arguments one week later. The jury's deliberations commenced at 3:45 p.m. on Wednesday, April 26. On Monday, May 1, the Court received a note from the jury that read "Since we began deliberations we have come to realize that we are deadlocked. It seems opinions are crystallized. We don't believe we can move on from this point. Please advise." [14] I encouraged the jury to continue deliberations, by reading a standard charge based on *Allen v. United States*.[15]

On Thursday, May 4, the jury wrote a note indicating that a single juror was

---

9. *See id.* at 93–97. The material witness statute, 18 U.S.C. § 3144, provides that "If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person...."

10. *See United States v. Awadallah*, 202 F.Supp.2d 55, 59–60 (S.D.N.Y.2002) (*"Awadallah III"*) (reading the allegations regarding Awadallah's confinement in the light most favorable to the Government, and declining to make findings of fact on disputed issues).

11. Awadallah's October 10 grand jury testimony is described in detail in *Awadallah II*, 202 F.Supp.2d at 25–34.

12. The October 15 grand jury testimony is described in *Awadallah II*, 202 F.Supp.2d at 35–36.

13. *See United States v. Awadallah*, 173 F.Supp.2d 186, 187–88 (S.D.N.Y.2001) (*"Awadallah I"*).

14. *See* Trial Transcript ("Tr.") at 1070.

15. 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

refusing to deliberate.[16]  I asked the fore-person to identify that juror, and then called him into the courtroom for an individual voir dire.  The following exchange occurred:

> THE COURT:  ... She's saying you won't deliberate with the other jurors, you won't discuss the case with the other jurors, you won't engage in debate.  Is she right?
>
> JUROR:  Not the way I see it.
>
> THE COURT:  Not the way you see it. You think you are willing to debate?
>
> JUROR:  Yes.
>
> THE COURT:  And have you, in your opinion, been engaging in debate with your fellow jurors?
>
> JUROR:  Well, I have told them my points of view and what I consider important in the case, and they reject those....  And they tell me their points, and I don't believe they override the points I'm making.[17]

Further questioning of this juror confirmed that he was not refusing to deliberate, but held a different view than the majority.  In short, a holdout situation had developed, and I was forced to declare a mistrial.[18]

Two days later, an article in the *New York Times* cited the holdout juror in reporting that "jurors had told stories of the World Trade Center attack during deliber-ations, sometimes tearfully." [19]  Awadallah moved for a change of venue, arguing that this development along with the "hostile deliberative environment" during trial were indicia of "actual prejudice in 2006," and that "a second trial in the greater metropolitan area, including New York and Connecticut, would be a violation of Mr. Awadallah's constitutional rights." [20] The Government opined that a change in venue was unnecessary because Awadallah had received and would receive a fair trial in New York City.[21] The Government also argued that "given the dubious sources of this information," if the Court intended to rely on the statements in the *New York Times* article, "it must conduct an evidentiary hearing and recall the jurors to testify regarding whether they were in fact discussing their personal experiences associated with September 11, 2001, and, if so, in what context." [22]

The jury foreperson agreed to reappear and answer the parties' questions—specifically, to confirm or deny the account in the *New York Times*.  An interview was conducted on Thursday, July 20, in open court.  The foreperson stated that during the course of deliberations, between "two or three, possibly four" people had told their personal stories of the September 11 attacks,[23] and that there was crying involved.[24]  At least one of those people who recounted his or her story had been in

---

16.  *See* Tr. at 1123 ("One juror admitted to us that they have their [sic] mind made up before it began deliberations after they heard the summation ... We have given this juror every opportunity to deliberate, as the Court has instructed the jury; hence, the reason we have been deliberating for six days.").

17.  *Id.* at 1135.

18.  *See id.* at 1145–47.

19.  Michael Brick & Sarah Garland, *Another Prologue Begins in Epic 9/11 Court Case*, N.Y. Times, May 6, 2006, at B1.

20.  June 9, 2006 Letter from Sarah Kunstler to the Court ("Reply Mem.") at 2–3.

21.  *See* Opp. Mem. at 7.

22.  *Id.* at 6.

23.  Transcript of July 20, 2006 Conference at 4.

24.  *See id.* at 6.

Manhattan on the day of the attacks.[25] The foreperson reported that this conversation occurred sometime during the second week of the deliberations, when tensions in the jury room were high as a result of the holdout situation.[26]

## III. LEGAL STANDARD

### A. Peremptory Challenges

Under Rule 24(b) of the Federal Rules of Criminal Procedure, "[i]f the offense charged is punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges."[27] The Rule states that "the court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly."[28] However, the Rule does not provide parallel authorization to grant additional peremptory challenges in the case of an individual defendant. There is no guidance from the Second Circuit on this issue, but in *United States v. Wilson*, Judge Edward Weinfeld did a searching analysis and rejected a defendant's request for additional challenges, noting that " 'there is no authority in [Rule 24(b) ] for

according extra challenges to a single defendant.' "[29]

### B. Change of Venue

■ The Sixth Amendment guarantees that in all criminal prosecutions, the defendant shall enjoy the right to trial "by an impartial jury."[30] In certain extraordinary circumstances, this fundamental right may be compromised because of juror prejudice.[31] Under Rule 21(a), a transfer of venue is warranted "if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." The determination of whether prejudice makes a fair trial unlikely "is committed to the district court's discretion."[32]

#### 1. Pretrial Publicity

Forty years ago, the Supreme Court held that "where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity."[33] Where a Rule 21(a) motion is based on adverse pretrial publicity, the Second Circuit has

---

**25.** *See id.* at 7.

**26.** *See id.* at 13; 8–9 ("THE COURT: I think what he is driving at is the context, what did that have to do with the deliberations.; THE WITNESS: I think there was some frustration at that point.; Q. Was that with the juror who was disagreeing with the rest of you?; A. Yes.").

**27.** Fed.R.Crim.P. 24(b).

**28.** *Id.*

**29.** 571 F.Supp. 1422, 1429–30 (S.D.N.Y.1983) (quoting *United States v. Gullion*, 575 F.2d 26 (1st Cir.1978), and citing *Weedin v. United States*, 380 F.2d 657 (9th Cir.1967), and *Estes v. United States*, 335 F.2d 609 (5th Cir.1964)).

**30.** U.S. Const. Amend. VI.

**31.** *See, e.g., Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (reversing trial court's refusal to grant change of venue where the film of an "interview" in jail between sheriff and defendant, in which defendant confessed to multiple crimes in response to leading questions, had been televised three times to tens of thousands of people in the parish).

**32.** *United States v. Maldonado–Rivera*, 922 F.2d 934, 966–67 (2d Cir.1990).

**33.** *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).

established a three-step process for the trial court: *first*, "determine whether the coverage has a potential for unfair prejudice"; *second*, "canvass the jury to find out if they have learned of the potentially prejudicial publicity"; and, *third*, "examine individually exposed jurors—outside the presence of the other jurors—to ascertain how much they know of the distracting publicity and what effect, if any, it has had on that juror's ability to decide the case fairly." [34]

■ Traditional factors for assessing the risk of presumed prejudice include the extent to which the government is responsible for generating the publicity, the extent to which the publicity focuses on the crime rather than on the individual defendant charged with it, and other factors reflecting on the likely effect of the publicity on the ability of potential jurors in the district to hear the evidence impartially. [35] In applying this test, "[i]t is the impartiality of the jurors—not the quantum of publicity—that determines whether the trial proceedings may be fairly conducted." [36] In other words, "the Constitution does not require ignorant jurors, only impartial ones." [37]

## 2. Bias in the Jury Pool

Recently, several courts have addressed change of venue motions that cannot be said to hinge on the effects of pretrial publicity, but rather on the effects that a massive, disastrous event has wrought on the jury pool as a whole. In this district, such effects were examined during a criminal case against al Qaeda member Mamdouh Mahmud Salim, who was charged with participating in the 1998 African embassy bombings and with stabbing a prison guard. Salim moved for a change of venue "on the basis of the widespread pretrial publicity surrounding September 11, 2001 and the alleged prejudicial implications on the ability of Salim to receive a fair trial in the Southern District of New York." [38] Because there was little evidence that the public was familiar with the charges against Salim, Judge Deborah Batts noted that the issue was really "whether, even absent the prevalence of case-specific prejudicial pretrial publicity, the events of September 11, 2001 have so incapacitated potential jurors drawn from the Southern District of New York that a fair trial here for Salim would be unlikely." [39] Judge Batts denied Salim's motion, holding that "careful voir dire questioning and other methods aimed at garnering a fair trial" had not been rendered futile. [40] In the Eastern District of Virginia, two change of venue motions in cases involving terrorism charges have been denied on similar grounds, despite the proximity of these trials to the Pentagon. [41]

*United States v. Timothy McVeigh* provides a rare example in which a court did grant a change of venue motion due to the prejudicial effects of a terrorist act on the entire jury pool. In *McVeigh*, the court

34. *United States v. Gaggi*, 811 F.2d 47, 51 (2d Cir.1987).

35. *See Maldonado–Rivera*, 922 F.2d at 967.

36. *Gaggi*, 811 F.2d at 51.

37. *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir.1995).

38. *United States v. Salim*, 189 F.Supp.2d 93, 94 (S.D.N.Y.2002).

39. *Id.* at 96.

40. *Id.*

41. *See United States v. Lindh*, 212 F.Supp.2d 541, 550 (E.D.Va.2002); *United States v. Moussaoui*, No. 01–455–A, slip op. at 1 (E.D. Va. June 25, 2002).

held a multi-day hearing to study the "immeasurable effects on the hearts and minds of the people of Oklahoma from the [1995 Oklahoma City bombing] blast and its consequences." [42]  Following this hearing and the review of a voluminous record including survey data and expert reports, the court found that in Oklahoma there would have been "such identification with a community point of view that jurors [would] feel a sense of obligation to reach a result which [would] find general acceptance in the relevant audience." [43] McVeigh's trial was transferred to Denver, Colorado.

## IV.  DISCUSSION

### A.  Peremptory Challenges

■ Awadallah argues that "[t]he court has broad discretion to change the allotment and provide additional peremptory challenges," but there is no Second Circuit caselaw to support this assertion in the context of a single defendant case. [44] There is also no support in the plain language of Rule 24(b), and I therefore agree with Judge Weinfeld's analysis in *Wilson*. [45] Wright and Miller's *Federal Practice and Procedure* supports the same conclusion, explaining that a court "in its discretion may allow additional peremptory challenges if there is more than one defendant, but there is no provision for allowing extra challenges to a defendant tried alone." [46] Awadallah's motion for additional peremptory challenges is therefore denied.

### B.  Change of Venue

The change of venue analysis in this case does not turn on pretrial publicity specifically related to the Government's case against Awadallah.  As the Government notes, during the jury selection process in April, "few if any potential jurors expressed even a passing familiarity with Awadallah or the perjury charges against him." [47]

Instead, this motion is made on the basis that "New Yorkers are too close to the events of September 11, 2001" to give Awadallah a fair trial.[48]  Awadallah argues that his case parallels the *McVeigh* case.[49] If Awadallah was actually charged with participating in the September 11 attacks, it is possible to imagine that the prejudice in this case would be comparable to the community scrutiny and outrage that justified a change of venue in *McVeigh*.  But Awadallah is charged with perjury, not terrorism, and this fact distinguishes his case from the *McVeigh* matter.[50]

---

42.  *United States v. McVeigh*, 918 F.Supp. 1467, 1469 (W.D.Okla.1996).

43.  *Id.* at 1473.

44.  Def. Mem. at 1 (citing, e.g., *United States v. Aloi*, 511 F.2d 585, 598 (2d Cir.1975) and *United States v. Walker*, 922 F.Supp. 732, 743 (N.D.N.Y.1996), both of which involved multiple defendants).

45.  *See* 571 F.Supp. at 1429–30.

46.  2 Wright & Miller, Federal Practice & Procedure (Criminal) § 385 (3d ed.  2000 & Supp.2005).

47.  Opp. Mem. at 7–8.

48.  Def. Mem. at 5.

49.  *See* Transcript of May 22, 2006 Conference at 17.

50.  *Accord United States v. Lindh*, 212 F.Supp.2d 541, 552 n. 15 ("This case is easily distinguishable from *United States v. McVeigh*, where a transfer of venue was ultimately granted based on the impact of defendant's conduct—the bombing of the Murrah Federal Office Building in Oklahoma City—on the particular district in which the case was filed."); *United States v. Salim*, 151 F.Supp.2d 281, 285 (S.D.N.Y.2001) (In *McVeigh*, "[t]he pretrial publicity essentially functioned to create such a strong emotional and community response that the Court had

Awadallah's best argument is that unlike any other reported case, the parties to this trial already have evidence that bias within the jury pool affected the deliberations.[51] Indeed, Awadallah is correct in the assertion that "tearful discussions of personal experiences of the World Trade Center attack had no place in this jury room."[52] The Court admonished the jury that Awadallah was not charged with participating in the September 11 attacks, and during voir dire the jurors were asked whether the events of September 11 would affect their ability to be fair and impartial to both sides in this case. Nonetheless, there is no doubt that an emotional conversation about jurors' personal September 11 stories occurred in spite of these precautions. Thus, the first deliberation should be treated as a miner's canary, alerting all parties to the possibility of dangerous

prejudice flowing from jurors' personal experiences of the September 11 attacks.[53]

■ And yet, in exercising my discretion under Rule 21(a), I am not convinced that moving the trial would be the best way to ensure an impartial jury. *First,* the effects of the September 11 attacks were felt nationwide, and there is no reason to believe that jurors in a different jurisdiction would lack an emotional response with prejudicial effects.[54] *Second,* the Second Circuit has reminded lower courts that "transfer from a metropolitan area to a smaller city may result in more rather than less intensive publicity."[55] *Third,* the Southern District of New York serves one of the country's most "diverse cross-section of ethnicities, backgrounds, and experiences."[56] These qualities have convinced many courts to deny a motion for change of venue because such a popula-

---

serious doubt in the ability of all Oklahoma jurors to feel anything but a personal stake in the outcome.... That is simply not the case here.").

51. *See* Reply Mem. at 1–2.

52. *Id.* at 2.

53. This problem was undoubtedly exacerbated by the Government's closing argument, which began and ended with an appeal to recall that this case involved "the worst terrorist attacks in [this/our] nation's history." Tr. at 862, 909.

54. *See Lindh,* 212 F.Supp.2d at 549 (in denying motion to change venue, court noted that "this prosecution has understandably occasioned considerable *nationwide* publicity, and it is likely that few, if any, citizens here in this district, *or indeed in any district,* will not have read or heard of this case") (emphasis added); *Salim,* 189 F.Supp.2d at 97 ("While Defendant is correct that indeed, the tragedy has evoked a veritable 'tidal wave' of passions, and while New York residents are particularly hard hit because of the destruction of the World Trade Center and considerable loss of loved ones, the tidal wave is of national, not just local, proportions.") (citation omitted).

55. *United States v. Dioguardi,* 428 F.2d 1033, 1039 (2d Cir.1970). *Accord CBS, Inc. v. U.S. District Court,* 729 F.2d 1174, 1181 (9th Cir. 1984) ("The size and heterogeneity of such communities make it unlikely that even the most sensational case will become a 'cause celebre' where '[t]he whole community ... becomes interested in all the morbid details.' ") (quoting *Estes v. Texas,* 381 U.S. 532, 545, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965)); *Application of Cohn,* 332 F.2d 976, 977 (2d Cir.1964) ("To remove the trial of a highly publicized case (to accept petitioner's argument) to a small community outside of the City of New York would tend to focus the spotlight more brightly upon the case."); *United States v. Livoti,* 8 F.Supp.2d 246, 249 (S.D.N.Y.1998) ("It is likely here that the transfer of this case to Albany would result in at least as intense media coverage there as the case has received here.").

56. *United States v. White,* No. 02 Cr. 1111, 2003 WL 721567, at *5 (S.D.N.Y. Feb.28, 2003) (denying change of venue motion because "[i]t is just as likely, if not more so, that jurors from this district, one of the largest and most diverse in the country," would be as fair and impartial as jurors from anywhere else).

tion is "able, if not better suited, to rise to the occasion of trying this case with an open mind."[57]

I agree with the courts that have faced similar circumstances and found a careful individual voir dire examination to be the most effective tool to address potential prejudice in the jury pool.[58] Many high profile cases have been tried in the Southern and Eastern Districts of New York, and courts have relied on "thorough voir dire examinations . . . to produce unbiased juries."[59] Choosing an impartial jury for Awadallah's retrial will require a comprehensive juror questionnaire, an expanded jury pool, individualized voir dire, and an opportunity for attorney input on the content of the voir dire. Indeed, the defendant has requested an expanded juror questionnaire in light of the first trial. A revised questionnaire, indicating the additional questions, is attached to this Opinion as Exhibit A. This questionnaire will be used in the second trial, and combined with careful voir dire examination and jury instruction, it should fully protect Awadallah's right to be tried by an impartial jury.

## V. CONCLUSION

For the foregoing reasons, Awadallah's motions for change of venue and for an increased number of peremptory challenges are denied.

SO ORDERED.

## Exhibit A

### JURY QUESTIONNAIRE

JUROR NAME _____

Please indicate your *borough* or *county* of residence (*e.g.*, Manhattan, the Bronx, Westchester, etc.). _____

_____

Please indicate the name of the town or the neighborhood in the Borough in which you reside. _____

_____

*Instructions*

You are sworn to give true and complete answers to all questions.

This questionnaire is designed to (1) expedite the jury selection process in this case; (2) determine whether each juror will be fair in deciding the case; and (3) provide information to help the Court and counsel decide which jurors they will excuse from the panel.

*DO NOT DISCUSS THE QUESTIONS OR ANSWERS WITH FELLOW JURORS; IT IS VERY IMPORTANT THAT YOUR ANSWERS BE YOUR OWN INDIVIDUAL ANSWERS.*

**57.** *Salim,* 151 F.Supp.2d at 284 (citing *United States v. Salameh,* No. 93 Cr. 0180, 1993 WL 364486, at *1 (S.D.N.Y. Sept.15, 1993)).

**58.** *See, e.g., Lindh,* 212 F.Supp.2d at 549 (voir dire can ensure an impartial jury because "[n]o juror will be qualified to serve unless the Court is satisfied that the juror (i) is able to put aside any previously formed opinions or impressions, (ii) is prepared to pay careful and close attention to the evidence as it is presented in the case and finally (iii) is able to render a fair and impartial verdict based solely on the evidence adduced at trial and the Court's instructions of law"); *Salim,* 189

F.Supp.2d at 97 ("Precautions can function to assure the selection of an unbiased jury. Specifically, careful voir dire questioning on this topic, accompanied by the assembling of a jury pool significantly larger than the normal size, will be sufficient in detecting and eliminating any prospective jurors prejudiced by their personal connection to September 11, 2001.").

**59.** *United States v. Volpe,* 42 F.Supp.2d 204, 218 (E.D.N.Y.1999) (listing notorious mafia, terrorism, and police brutality trials in New York).

It is important that you do not discuss this case with any one of your fellow jurors or with anyone else. Do not read anything about the case or watch anything on television about the case or listen to anything on the radio about the case. What you learn about the case you will learn in court only.

*The Nature of an Indictment*

An indictment is merely an accusation. It is proof of nothing. You may draw no inference against the defendant from the fact that he has been indicted. The defendant has pleaded "not guilty" to each of the charges against him. The law presumes a defendant to be innocent of a criminal charge. A defendant does not have to prove anything. The Government bears the burden of proving the guilt of any defendant beyond a reasonable doubt.

*Description of the Case*

Osama Awadallah is charged in an indictment with having made false statements to a grand jury that was investigating the airplane hijackings and attacks on the World Trade Center and the Pentagon that occurred on September 11, 2001. While the defendant has no burden of proof, it is his position that his allegedly false statements to the grand jury were innocent mistakes that were not knowingly made.

*Questions*

Where indicated, check the line for "Yes" or "No." Furnish answers, explanations, or details in the space provided. If you need additional space to answer any question, use the last page of the questionnaire, and state the question number. Do not write on the back of any page.

1. Do you have any difficulty with your sight or hearing?
   Yes _____ No _____

2. Do you have any difficulty understanding the English language?
   Yes _____ No _____

3. Do you have any physical ailments or are you taking any medication or receiving any medical treatment that would prevent you from serving as a juror in this case?
   Yes _____ No _____

If you answered yes to Question(s) 1, 2, or 3, explain. _____

_____

4. The defendant in this case is Osama Awadallah. Do you know or have you heard of him?
   Yes _____ No _____

5. The defendant is represented by Jesse Berman, Elizabeth M. Fink, and Sarah Kunstler. Do you know any of these attorneys?
   Yes _____ No _____

If yes, which attorney(s) do you know and how do you know him, her, or them?

_____

_____

6. The Government is represented here, as in all cases where it is a party before this Court, by the United States Attorney for the Southern District of New York, who is Michael J. Garcia. The trial will be conducted by Assistant United States Attorneys Karl Metzner and Brendan R. McGuire. They will be assisted by Special Agent Thomas D. Rosato, Jr., of the Federal Bureau of Investigation, and paralegal specialist David Gardner. Do you know any of these persons?
   Yes _____ No _____

If yes, identify who you know and how you know that person. _____

_____

7. Have you or any relative or close friend ever had dealings with the United States Attorney's office?

Yes _____ No _____

If yes, explain. _____
_____

8. Have you, or has any member of your family or close friend, ever been employed by or received training by any local, state, or federal law enforcement agency, including but not limited to the following (circle as many as apply for each category):

|  | Self | Relative | Close Friend |
|---|---|---|---|
| Federal Bureau of Investigation | X | X | X |
| U.S. Attorney | X | X | X |
| Bureau of Alcohol, Tobacco, Firearms & Explosives | X | X | X |
| Internal Revenue Service | X | X | X |
| U.S. Citizenship and Immigration Services, and Bureau of Immigration and Customs Enforcement (formerly known as Immigration and Naturalization Service) | X | X | X |
| Department of Homeland Security | X | X | X |
| Drug Enforcement Administration | X | X | X |
| Military Police | X | X | X |
| Department of Corrections | X | X | X |
| State Troopers | X | X | X |
| Office of District Attorney | X | X | X |
| United States Marshals Service | X | X | X |

|  | Self | Relative | Close Friend |
|---|---|---|---|
| New York City Police Dep't | X | X | X |
| U.S. Bureau of Prisons | X | X | X |
| Department of Probation and Parole | X | X | X |
| Other: _____ | X | X | X |

9. Are you a lawyer?

Yes _____ No _____

If yes, state the general areas of law (*e.g.*, criminal/civil, litigation/corporate, etc.) you have had experience practicing and roughly how long you have practiced in each area. _____

_____

If no, have you had any legal training? Do you have relatives or close friends who are lawyers or who have legal training? Do you work in a law firm or with lawyers?

Yes _____ No _____

If yes, explain and indicate the general areas of practice (*e.g.*, criminal/civil, litigation/corporate, etc.) in which either you or your relatives or close friends practice or have received training. _____

_____

*Note:* In the following 84 questions, the Court does not wish to pry into the past history of jurors or their families, but wants only to be informed as to what experiences each juror (or those close to each juror) may have had in order to determine whether these prior experiences might affect the juror's opinion of how the criminal justice system works. Thus, the following questions must be answered fully and candidly to assure that the Court, and the parties, can make a proper decision

about whether jurors would be particularly suited for this case. Please do not feel embarrassed about any questions as the answers will be treated in strict confidence.

10. Have you, or has any relative or close friend, ever appeared as a witness in any investigation, before any grand jury, or in any trial, whether civil or criminal, federal or state?

Yes _____ No _____

If yes, explain. _____

_____

11. Have you or any relative or close friend ever been charged with any crime or been the subject of any investigation?

Yes _____ No _____

If yes, explain. _____

_____

12. Have you or any relative or close friend ever been involved in an offense involving alleged false statements?

Yes _____ No _____

If yes, explain. _____

_____

If yes, would this affect your ability to be a fair and impartial juror in a case dealing with alleged false statements?

Yes _____ No _____

13. Have you ever visited a jail or prison?

Yes _____ No _____

If yes, explain. _____

_____

14. Have you ever been questioned in any matter by the state or local police, any state or local law enforcement agency, the Department of Justice, or any United States investigative agency such as the Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), Internal Revenue Service (IRS), Bureau of Immigration and Customs Enforcement (formerly known as Immigration and Naturalization Service (INS) and Customs Service)?

Yes _____ No _____

15. Have you personally, or in connection with your business, ever been involved in any legal action or dispute with the United States, or any of its agencies, or had any interest in such legal action or dispute or its outcome?

Yes _____ No _____

If yes, explain. _____

_____

16. Have you, or has any relative or close friend, ever been a party to any law suit?

Yes _____ No _____

If yes, explain. _____

_____

17. Have you, or has any relative or close friend, ever been falsely accused of anything?

Yes _____ No _____

If yes, explain. _____

_____

18. Have you ever before served as a juror in a criminal case?

Yes _____ No _____

If yes, when and where? _____

_____

19. Have you ever before served as a juror in a civil case?

Yes _____ No _____

If yes, when and where? _____

_____

20. Have you ever served on a jury that could not decide the case because the jurors were deadlocked in disagreement?

Yes _____ No _____

21. Have you ever served as a grand juror?

Yes _____ No _____

If yes, state when, whether it was a state or federal grand jury, which county or federal district, and how long you served. _____

_____

22. If you served on a jury, was there anything that happened during your jury service that might influence you in this case?

Yes _____ No _____

If yes, explain. _____

_____

23. Do you have any strong opinions or feelings about the criminal justice system that would interfere with your ability to be fair and impartial in this case? Have you had any experience that affected your view of the criminal justice system?

Yes _____ No _____

If yes, explain. _____

_____

24. Have you, or has any relative or close friend, ever been the victim of a crime?

Yes _____ No _____

If yes, explain. _____

_____

25. During the trial, you may hear evidence about the following events:

(a) Mr. Awadallah meeting with people in San Diego

(b) The airplane hijackings and attacks on the World Trade Center and the Pentagon that occurred on September 11, 2001

(c) The conditions of Mr. Awadallah's detention in federal custody from September 20, 2001, through October 10, 2001

(d) Mr. Awadallah's grand jury testimony in New York on October 10 and 15, 2001

Have you read or heard anything about these events, the defendant, or this case?

Yes _____ No _____

If yes, what was the source of the information (radio, TV, newspaper, etc.)?

_____

_____

26. Do you feel that you know anything about the facts of this case?

Yes _____ No _____

If yes, explain. _____

_____

27. During the trial, you may hear the names of a number of individuals. Please look carefully at the following list of names:

Nawaf Al–Hazmi

Khalid Al–Mihdhar

Aurelia Alston

Jamal Awadallah

Robin L. Baker

Andrew Bedell

Brian Boetig

John H. Brown

Todd Carroll

Adam S. Cohen

Michel Craig

Wilfredo Crespo

William Eugene Dayhoff

Todd DeSimone

Antonio J. Falcon

Luz Figueria

Vincent G. Flynn

Darren J. Fortie

John Fotia

Janet Getler

Bradlee Godshall

Lorie L. Gottesman

Randal Bruce Hamud

Steven M. Kozma

Toufic Maged

Jacqueline Maguire

Sean McCluskey

Michael O'Hara

Cynthia Ofer

Marvin Leslie Owen

William Ryan Plunkett

Miriam (Mimi) Pollack

Patricia Rico

Brian Rielly

Irwin Rothman

Eleanor Scott

Scott Shepherd

Florence Smith

Joan Stauble

Frank J. Texeira, IV

Tracy A. Thompson

George Toscas

Gary Uher

Leslie Walton

Teofilo Weston

Are any of these names familiar to you in any way?

Yes _____ No _____

If yes, circle the familiar name(s).

28. During the trial, you may hear reference to a number of locations. Please look carefully at the following list of locations:

Dulles International Airport

Grossmont College, San Diego

7200 Saranac Street, San Diego

FBI Office, San Diego

Metropolitan Correctional Center (MCC), San Diego

San Bernardino County Jail

Oklahoma City Federal Transfer Center (FTC)

Metropolitan Correctional Center (MCC), New York

Grand Jury Room, United States Courthouse, Foley Square, Manhattan

Do you have any specific familiarity or association with any of these locations?

Yes _____ No _____

If yes, circle the familiar location(s).

29. Some of the evidence may come from searches performed by law enforcement officers. Evidence obtained from these searches is permitted as evidence in this case. Do you have any personal feelings that would influence your evaluation of this evidence?

Yes _____ No _____

If yes, explain. _____

_____

30. Would you be inclined to believe or disbelieve a witness solely because the witness is a police or law enforcement officer?

Yes _____ No _____

31. Which of the following best summarizes your opinion about how a juror should evaluate the testimony of a witness who is a police officer, federal agent, or other law enforcement witness: (circle one of the following three choices)

(a) the law enforcement witness is more likely to tell the truth than other witnesses;

(b) the law enforcement witness is less likely to tell the truth than other witnesses;

(c) the testimony of the law enforcement witness should be evaluated the same way as the testimony of other witnesses.

32. The Court will instruct the jury that every person accused of a crime is presumed to be innocent; an indictment,

which is only an accusation, is not proof of anything; and a defendant cannot be found guilty unless the jury, having heard all of the evidence in the case, unanimously decides that the evidence proves his guilt beyond a reasonable doubt. Will you accept and apply this rule of law?

Yes _____ No _____

33. The Court will instruct the jury that in a criminal case the burden of proof remains with the prosecution. In order to obtain a verdict of guilty, the prosecution must prove beyond a reasonable doubt that the defendant is guilty. A person charged with a crime has no burden whatsoever to prove that he is not guilty. Will you accept and apply this rule of law?

Yes _____ No _____

34. The Court will instruct the jury that the facts are for the jury to determine and the law is for the Court to determine. These two areas are separate and distinct. At the end of the case, the Court will instruct you on the law. It will be your job and your job alone to determine the facts under the Court's explanation of the law. But you are required to apply the law as the Court explains it to you. Will you accept and apply this rule of law?

Yes _____ No _____

35. The Court will instruct the jury that the defendant has the right to elect whether or not to testify. If he elects not to testify, the jury may not draw any inference against him based on that decision. The fact that a defendant chooses not to testify may not enter into the jury's deliberation. Will you accept and apply this rule of law?

Yes _____ No _____

36. The Court will instruct the jury that it is required by law to make its decisions solely on the basis of evidence (or lack of evidence) presented in court and not on the basis of other information, suspicion, or prejudice a juror may have. Will you accept and apply this rule of law?

Yes _____ No _____

37. The indictment in this case has two counts. The Court will instruct the jury that it must consider each count separately. You may not vote to convict the defendant on any count unless the evidence with regard to that count proves that the defendant is guilty beyond a reasonable doubt. Will you accept and apply this rule of law?

Yes _____ No _____

38. Mr. Awadallah was detained for 20 days prior to his grand jury testimony. The courts have already determined that it was lawful for the Government to detain Mr. Awadallah in order to secure his testimony before the grand jury. Do you have any strong feelings regarding the detention of witnesses that will interfere with your ability to decide this case fairly?

Yes _____ No _____

If yes, explain. _____
_____

39. *Would the fact that Mr. Awadallah was acquainted with two of the September 11th hijackers and attended the same mosque make it difficult for you to be a fair and impartial juror?*

*Yes _____ No _____ Not Sure _____*

40. *Do you believe that because Mr. Awadallah was acquainted with two of the September 11th hijackers, it is more likely that he would participate in terrorist acts against the United States?*

Yes _____ No _____ Not Sure _____

41. *Do you believe that because Mr. Awadallah was acquainted with two of the September 11th hijackers, it is more likely that he would sympathize with terrorist acts against the United States?*

Yes _____ No _____ Not Sure _____

42. *Would the fact that Mr. Awadallah is an observant Muslim of Palestinian descent who is sympathetic to the Palestinian cause make it difficult for you to be a fair and impartial juror?*

Yes _____ No _____ Not Sure _____

43. *Do you believe that Mr. Awadallah's background as an observant Muslim of Palestinian descent who is sympathetic to the Palestinian cause makes it more likely that he would participate in terrorist acts against the United States?*

Yes _____ No _____ Not Sure _____

44. *Do you believe that Mr. Awadallah's background as an observant Muslim of Palestinian descent who is sympathetic to the Palestinian cause makes it more likely that he would sympathize with terrorist acts against the United States?*

Yes _____ No _____ Not Sure _____

45. The Court will instruct the jury that it must not consider a defendant's race, religion, or national origin in reaching a verdict. Will you accept and apply this rule of law?

Yes _____ No _____

46. The defendant is entitled to certain rights under the law. Do you have strong feelings regarding the rights of defendants in criminal cases that will interfere with your ability to decide this case fairly?

Yes _____ No _____

If yes, explain. _____
_____

47. Will you accept the proposition that the question of punishment is for the Court alone to decide, and that the possible punishment must not enter into your deliberations as to whether the defendant is guilty or innocent?

Yes _____ No _____

If no, explain. _____
_____

48. Will you accept the proposition of law that sympathy must not enter into the deliberations of the jurors as to guilt or innocence of the defendant, and that only the evidence produced here in Court may be used by you to determine the guilt or innocence of the defendant?

Yes _____ No _____

If no, explain. _____
_____

49. It is possible that this case will receive some media attention. The Court wants to make sure that this case is decided solely on the evidence in the courtroom and not based on things that are said outside the courtroom. Accordingly, the Court will instruct you that you must avoid reading about the case in the newspapers, listening to any radio or television reports, or reading any internet coverage or discussion about the case. The Court will also direct that you must avoid discussing the case with friends or family during the course of the trial. Would following the Court's directives pose any difficulty for you?

Yes _____ No _____

If yes, explain. _____
_____

50. As stated previously, this case involves alleged violations of federal law involving alleged false statements to a grand jury. Is there anything about the nature of these charges that make you

feel it would be difficult for you to be an impartial and fair juror?

Yes _____ No _____

If yes, explain. _____
_____

51. Have you, or has any relative or close friend, ever been subpoenaed to appear in any criminal case or before any grand jury? Have you, or has any relative or close friend, been subpoenaed to appear in any Government hearing, including a hearing held by any of the following: Congress; a state or municipal legislature; or a federal, state or local agency?

Yes _____ No _____

If yes, explain. _____
_____

52. Have you, or has any family member or close friend, ever made any claim or brought any lawsuit against any federal, state, or local government agency, or has any government agency ever made a claim or filed a lawsuit against you, a family member, or close friend?

Yes _____ No _____

If yes, explain. _____
_____

53. Have you, through any experience you have had or anything you have seen, heard, or read, developed any personal feelings for or against the United States Attorney's Office for the Southern District of New York, the Department of Justice, the Federal Bureau of Investigation, the United States Bureau of Prisons, or any law enforcement agency, that make you feel it would be difficult for you to be a fair and impartial juror?

Yes _____ No _____

54. Have you, either through any experience you have had or anything you have seen, heard, or read, developed any personal feelings for or against defense at-torneys in criminal trials, that make you feel it would be difficult for you to be a fair and impartial juror?

Yes _____ No _____

55. Have you, or has a family member or close friend, ever visited the Middle East, including but not limited to Afghanistan, Arab Emirates, Egypt, Iran, Jordan, Kuwait, Iraq, Syria, Israel, the West Bank, Gaza, Lebanon, Libya, Pakistan, Qatar, Saudi Arabia, Sudan, and Yemen?

Yes _____ No _____

If yes, what was the purpose of the visit? _____
_____

56. Have you, or has a family member or close friend, ever worked in a civilian or non-military government capacity anywhere in the Middle East, including but not limited to Afghanistan, Arab Emirates, Egypt, Iran, Jordan, Kuwait, Iraq, Syria, Israel, the West Bank, Gaza, Lebanon, Libya, Pakistan, Qatar, Saudi Arabia, Sudan, and Yemen?

Yes _____ No _____

If yes, list the Middle Eastern countries, who worked there, when, and the nature of the work. _____
_____

57. Do you know anyone who presently resides in the Middle East?

Yes _____ No _____

If yes, is it (circle all that apply) a friend, relative, or colleague? In what country does each person live? _____
_____

58. How knowledgeable are you about the history and practices of Islam?

_____ Very knowledgeable       _____ Not very knowledgeable

_____ Somewhat knowledgeable   _____ Not knowledgeable at all

If you have any knowledge about Islam, what is the basis of your knowledge?

_____

_____

59. Do you believe that Islam endorses violence to a greater extent than, a lesser extent than, or the same extent as other major religions? (Circle one of the following four choices.)

(a) Greater extent

(b) Same extent

(c) Lesser extent

(d) I don't know

If you selected "(a) Greater extent," will that affect your ability to be fair and impartial to Mr. Awadallah, who practices the Islamic faith?

Yes _____ No _____

60. Have you ever visited a mosque?

Yes _____ No _____

If yes, what were the circumstances of the visit? _____

_____

61. Have you, or has a family member or close friend, ever felt that you were, or he or she was, discriminated against because of your, his, or her religious beliefs?

Yes _____ No _____

62. Have you, or has a family member or close friend, ever visited the Pentagon?

Yes _____ No _____

If yes, when and why? _____

_____

63. _Where were you on the morning of September 11, 2001? If you were in New York City, which borough or boroughs?_ _____

64. Were you, or was anyone you know, a victim, directly or indirectly, of the September 11, 2001 attacks on the Pentagon and the World Trade Center?

Yes _____ No _____.

If yes, explain. _____

65. Do you speak or understand the Arabic language?

Yes _____ No _____

66. Do you have any religious, philosophical, or other beliefs that would make you unable to render a guilty verdict for reasons unrelated to the law and the evidence?

Yes _____ No _____

67. Even if these questions have not covered it, is there anything about this case, or the particular charges against this defendant, or the defendant himself, or anything else that would interfere with your ability to decide this case impartially and fairly?

Yes _____ No _____

_Personal Background_

68. What is your age? _____

69. Are you: Male _____ Female_____

70. Where were you born? (List city and state) _____

_____

If outside the U.S., indicate what country. _____

_____

71. Do you live in a single family home, an apartment, a cooperative, or a condominium? _____

72. Do you own or rent? _____

73. List any other towns and cities where you have lived during the past ten years.

_____

_____

74. Have you ever filed a complaint with the police against anyone?

Yes _____ No _____

If yes, describe. _____

_____

75. Is there a crime prevention group in your neighborhood?

Yes _____ No _____

If yes, do you participate in it?

Yes _____ No _____

76. Do you participate in any other groups or associations the main purpose of which is to fight crime?

Yes _____ No _____

If yes, explain. _____
_____

77. What is your current occupation and employment? Describe the type of job and the type of business. For example, simply list "medical receptionist," "bus driver," "lawyer," or "short-order cook." If you are retired or unemployed, so state, and give information as to what your occupation has been in the past.

_____
_____

78. Have you, or has any member of your family or close friend, worked or applied for a position in the police, U.S. Attorney's office, District Attorney's office, FBI, Bureau of Immigration and Customs Enforcement (formerly known as Immigration and Naturalization Service), or other law enforcement agency?

If yes, when, where, and what agency?

_____
_____

79. Have you ever taken any courses or worked in the fields of law, criminal justice, criminology, or other related areas?

If yes, please list the courses or experience. _____
_____

80. Approximately how long have you been employed in your present position?

_____

81. List the types of jobs you have held over the past ten years and the approximate length of time you worked at each job. _____
_____

82. Do you, or does any member of your immediate family, now work, or have you ever worked, for a government agency (city, state, or federal)?

Yes _____ No _____

If yes, list the person, the agency, and what the position was. _____
_____

83. Are you married? _____
divorced? _____
single? _____
widowed? _____

84. How many children, if any, do you have? _____

85. How many other adults currently live in your household? _____ Describe the relationship of each to you (*e.g.*, mother, son, roommate, partner). _____
_____
_____

86. If your household includes other adults, describe generally the occupation of each. _____
_____

87. Describe generally the occupations of any additional adult children and their spouses or partners. _____
_____

88. Describe the level of school you have completed. _____
_____

If you attended college, state your major course of study. _____

Describe the level of school your spouse or partner has completed, if applicable.

_____
_____

89. Have you ever served in the armed forces of any country?

    Yes _____ No _____

If yes, provide rank and duties. _____
_____

State the branch in which you served.
_____

When did you serve? _____

What type of discharge did you receive?
_____
_____

Were you ever court-martialed or subject to any disciplinary proceeding or action?

    Yes _____ No _____

If yes, explain. _____
_____

90. What newspapers, if any, do you read regularly? _____
_____

What sections of the newspapers do you read regularly? _____
_____

91. What television news programs, if any, do you watch? _____

92. List magazines that you read, radio shows to which you listen, television programs that you watch, websites that you visit, and indicate how frequently (daily, often, occasionally, rarely). _____
_____

93. What was the last book that you read? _____
_____

94. List any civic, social, religious, political, or professional organizations, clubs, or associations to which you belong.
_____
_____

95. What are your hobbies or interests outside of work and family? _____
_____

96. Is there any reason why you could not be fair and impartial to the defendant in this case?

    Yes _____ No _____

97. Is there any reason why you could not be fair and impartial to the Government in this case?

    Yes _____ No _____

If you answered yes to Question(s) 90 or 91, explain. _____
_____

98. Is there anything else about you that may be relevant to your ability to serve as a juror in this case? _____
_____

99. This trial is expected to begin on April 17 and to last approximately seven business days. Every reasonable effort will be made to accommodate the special needs of individual jurors. Jury service is essential to the proper administration of justice. Accordingly, inconvenience will not be a sufficient reason to excuse a prospective juror. The juror must show that service in this case would cause an unacceptable amount of personal hardship. In light of these considerations, would service in this case create an unacceptable hardship for you?

    Yes _____ No _____

If you answered yes, explain. _____
_____

Note: If your hardship involves fixed and scheduled travel plans, where you will be out of the New York City area, indicate the dates of your planned trip.
_____

If the hardship claimed is financial, describe the nature of the hardship. Recall that you will be paid $40 per day for

266

your jury service.

Use this page to continue your answer to any question. Make sure to state the question number(s).